Midvale Florists *v.* Keane, Appellant.

Argued September 9, 1968.   Before Wright, P. J., Watkins, Montgomery, Jacobs, Hoffman, Spaulding, and Hannum, JJ.

*Barbara Ann Duffy,* for appellant.

*John Edward Sheridan,* for appellee.

OPINION BY MONTGOMERY, J., November 14, 1968:

This appeal reaches us from an order affirming an award of arbitrators, as amended. It is agreed that this was common law arbitration and not under the Act of April 25, 1927, P. L. 381, 5 P.S. §161 et seq.

The two litigants, Thomas F. Keane, Jr., appellant, and Camillo Lupinacci, appellee, were partners engaged in the retail florist business, doing business as Midvale Florists, under a written agreement which provided for the settlement by arbitration of any disagreements arising from the conduct of the business, its dissolution, etc. A dispute having arisen between them, arbitrators were appointed to resolve it. Although the dispute included the question of who was the retiring partner, the arbitrators found that it was Mr. Keane and that it was he who was entitled to be paid his share of the business in the manner provided by the agreement. This finding is not questioned in this appeal.

Paragraph 20 of the agreement provided, inter alia, that, "In the event the remaining partner elects to buy out the withdrawing partner's interest the value of said interest shall be equal to the withdrawing partner's capital account on the date of notice of intention to withdraw from the partnership, adjusted as herein provided. The withdrawing partner's capital account on the date of such notice shall be increased by his share of partnership profits, for the period from the beginning of the year in which his withdrawal from the partnership takes place until the date of notice of such withdrawal. The real estate owned by the partnership shall be taken at a value equivalent to the assessed value fixed by the local authorities for real estate tax purposes for the year in which the withdrawal takes place, and the withdrawing partner's capital account shall be adjusted to reflect this valuation. . . ."

Although the partnership agreement provided for the establishment of a capital account for each partner, no such accounts were found in the ledgers of the partnership. In their place, however, the parties submitted to the arbitrators a balance sheet and estimate of net worth as of December 31, 1966, which, said the arbitrators in their initial report, ". . . thereby indicating to the arbitrators that they have agreed that the equities shall be established as of that date and on the basis of such statement." Such statement is not before us. However, it is stated in the first report that it indicated a net worth of $4,588.65 as of December 31, 1966 exclusive of good will, trade name or other intangible assets, which items were not to be considered as part of the capital account of the partners under Paragraph 23 of the agreement. This net worth statement did not include partnership real estate consisting of five properties, titles to which were held in the names of the individual partners and their respective wives. A stipulation signed by the parties confirmed the fact that this real estate belonged to the partnership.

In concluding their report the arbitrators directed that appellee Lupinacci pay to appellant Keane one-half of the amount shown by the balance sheet or $2,294.33, and one-half the value of the real estate as assessed value for tax purposes or an additional $18,200, the total assessed value being $36,400.

Thereafter, before confirmation of their award, the arbitrators filed a supplemental report reciting therein that when they filed their first report their attention had not been called to the fact that some of the real estate were encumbered with mortgages, and for that reason they amended their award by directing Lupinacci to pay to Keane only one-half of the equity in the real estate, the equity to be determined by deduct-

ing the total amount of all mortgages due on the properties from the total of their assessed value.

Thereafter, this supplemental report was again amended by reducing the total of the assessed values from $36,400 to $35,700, and establishing the amount of the mortgages thereon at $20,674.92 as of December 31, 1966, "as disclosed by the books and records of Midvale Florists", thus establishing the equity of the partnership in the real estate at $15,025.08, one-half of which or $7,512.54 being payable to Keane by Lupinacci. It was this final amended award which was confirmed by the lower court.

Thomas F. Keane, Jr., the retiring partner, in appealing from this confirmation order contends that (1), the partnership agreement provides that dissolution shall be accomplished by an acceptance of the tax assessment values as the real value of the real estate without the deduction of any existing mortgages thereon, and (2) that he was denied a hearing on this issue.

Since this is a common law arbitration award, the appellant, to succeed, must show by clear, precise and indubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrators which caused them to render an unjust, inequitable and unconscionable award, the arbitrators being the final judges of both law and fact. Their award will not be subject to disturbance for a mistake of either. *Keller v. Local 249 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 423 Pa. 353, 223 A. 2d 724 (1966); *Harwitz v. Selas Corporation of America*, 406 Pa. 539, 178 A. 2d 617 (1962); *Owens v. Concord Mutual Insurance Company*, 210 Pa. Superior Ct. 235, 232 A. 2d 14 (1967).

We find no evidence of fraud, misconduct, corruption, or other irregularity of this nature on the part of the arbitrators, nor is any alleged by appellant. His main complaint is that he was denied a hearing on the issue of whether the mortgages were deductible under the partnership agreement.

We do not find any need for a further hearing before the arbitrators to support their amended report. What in fact they did was to correct an error in their original report to include a finding that the partners by their agreement intended to use assessed values of the real estate, as distinguished from market values, as the basis for their dissolution, less any liens and encumbrances, the existence of which they had overlooked when first examining the books and records of the partnership. Had there been no mortgages on the properties the surviving partner under the agreement would have been entitled to the benefit, if any, of the differential between the tax assessment values and the market values. The existence or nonexistence of mortgages did not affect this right but merely reduce the equity the partnership had in the properties.

The arbitrators had before them the agreement of the partners, their books of account and the information concerning the real estate, including the stipulation signed by both partners agreeing that the properties, although held in individual names, were nevertheless partnership real estate. This evidence showed clearly that both partners contributed equal amounts of capital, shared equally in the profits and losses, that the real estate was acquired after the partnership was formed in 1958, the first piece being acquired in 1959, that neither partner was permitted to lease or mortgage any partnership real estate without the consent of the other partner, and that all partnership indebtedness was to be paid from the partnership bank

accounts by checks signed by both partners, and that mortgage payments, taxes, and insurance premiums were made from partnership funds in this manner. With this before them the only thing that was overlooked was the fact that there were balances due and unpaid on the mortgages, which is not denied by appellant.

Therefore, we conclude that his second contention to the effect that he was denied a hearing is without merit.

As to his first contention, we must conclude, upon the authority of *Harwitz v. Selas Corporation of America,* supra, and other cases previously cited, that the lower court had no authority to alter the findings of fact or law made by the arbitrators, whether they were right or wrong. Their finding that the parties intended to dissolve in the manner they directed was necessarily affirmed by the lower court.

Order affirmed.